## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re AmTrust Financial Services, Inc.
Securities Litigation

No. 1:14-cv-00736-VEC

THIS DOCUMENT RELATES TO:

<u>CLASS ACTION</u>

All Actions

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT</u>

ALSTON & BIRD LLP
Todd R. David
John D. Roesser
Jessica P. Corley (*Admitted Pro Hac Vice*)
Louis A. Russo
Joseph G. Tully
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND .......................................................................................4

    A.    The Company's Results.....................................................................................4

    B.    The GeoInvesting Report...................................................................................5

    C.    Intercompany Transactions Are Eliminated upon Consolidation.......................6

    D.    The Complaints..................................................................................................8

ARGUMENT ..............................................................................................................8

POINT I.

THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE ANY FALSE OR
MISLEADING STATEMENT, AN ESSENTIAL ELEMENT UNDER BOTH SECTIONS 10 AND 11 ......8

    A.    Conclusory References to Public Statements, Without More, Do Not Meet the
        Stringent Particularity Requirements..................................................................9

    B.    Plaintiffs' Vague References to "Accounting Machinations" Also Fail to
        Satisfy the Pleading Requirements ...................................................................11

        1.    Disagreements About Accounting Treatment Cannot Support a
            Fraud Claim .................................................................................................11

        2     The Amended Complaint Fails to Plead With Particularity Any Facts
            About the Alleged Manipulation ...................................................................13

        3     The Company Disclosed the Accounting Treatment for Intercompany
            Transactions .................................................................................................14

POINT II.

THE AMENDED COMPLAINT FAILS TO ADEQUATELY
PLEAD THE REMAINING ELEMENTS OF A SECTION 10B CLAIM...............................................16t

    A.    Plaintiffs Have Not Pled Scienter Adequately.........................................................16

i

    B.   The Amended Complaint Does Not Allege Loss Causation Adequately..................19

POINT III.

THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM
UNDER SECTION 11 OF THE SECURITIES ACT ........................................................................21

    A.   The GeoInvesting Report Relied Upon Public Financial Reporting
         Available More than a Year Before the Filing of the Amended Complaint..............22

    B.   The Statute of Limitations Was Not Tolled..................................................................23

    C.   The Recently Added Section 11 Claim Does Not Relate Back to the
         Filing of the Original Complaints ................................................................................24

    CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir.1995) ................................................................................................17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
    No. 03-MD-1529-LMM, 2005 WL 1679540 (S.D.N.Y. July 18, 2005) ........................24, 25

*In re AOL Time Warner, Inc. Sec. Litig.,*
    503 F. Supp. 2d 666 (S.D.N.Y. 2007) ......................................................................3, 19, 20

*Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel*
*OAO,*
    811 F. Supp. 2d 853 (S.D.N.Y. 2011),
    *aff'd sub nom., Frederick v. Mechel OAO,* 475 F. App'x 353 (2d Cir. 2012) .................. 18-19

*Charas v. Sand Tech. Sys. Int'l, Inc.,*
    No. 90-Civ.-5638-JFK, 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) ......................................22

*In re Chaus Sec. Litig.,*
    801 F. Supp. 1257 (S.D.N.Y. 1992) ..................................................................................24

*Chill v. Gen. Elec. Co.,*
    101 F.3d 263 (2d Cir. 1996) ............................................................................................17

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.,*
    679 F.3d 64 (2d Cir. 2012) ................................................................................................8

*Credit Suisse Securities (USA) LLC v. Simmonds,*
    132 S. Ct. 1414 (2012) ...............................................................................................23-24

*In re Cross Media Mktg. Corp. Sec. Litig.,*
    314 F. Supp. 2d 256 (S.D.N.Y. 2004) ..............................................................................19

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ...............................................................................................3, 19-20

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.,*
    343 F.3d 189 (2d Cir. 2003) ............................................................................................19

*Ganino v. Citizens Utilities Co.,*
    228 F.3d 154 (2d Cir. 2000) ..............................................................................................5

*Garber v. Legg Mason, Inc.,*
    347 F. App'x 665 (2d Cir. 2009) ........................................................................................4

| Cases | Page(s) |
|---|---|

*In re Gentiva Secs. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................................24

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).............................................................3, 18

*In re IndyMac Mortgage-Backed Securities Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011), *aff'd in part sub nom*, *Police & Fire Retirement Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013), *cert. granted*, 134 S. Ct. 1515 (2014) .......................................................23

*In re JP Morgan Chase Sec. Litig.*,
  No. 02-Civ.-1282-SHS, 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007), *aff'd sub nom.*, *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).............................................................3, 12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)...........................................................................16, 17

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*,
  No. 13-Civ.-755-KBF, 2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ...................21

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................18

*Kleinman v. Elan Corp.*,
  *plc*, 706 F.3d 145 (2d Cir. 2013)........................................................................16

*LC Capital Partners, L.P. v. Frontier Ins. Group*,
  318 F.3d 148 (2d Cir. 2003)................................................................................22

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005).........................................................................19, 20

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998)..................................................................................1

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  910 F. Supp. 2d 561 (S.D.N.Y. 2012)....................................................................5

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) .................................................................................... 22-23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003)..................................................................18

**Cases**                                                                                                          **Page(s)**

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
    No. 10-Civ.-440-LAK-HBP, 2013 WL 620257 (S.D.N.Y. Feb. 15, 2013)............................23

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..................................................................................12, 16

*In re Omnicom Group, Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)...........................................................................3-4, 19, 20, 21

*Pollio v. MF Global, Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009)..........................................................................10

*Retail, Wholesale, Dep't Store Union, AFL-CIO-CLC v. Nat'l Union of Hosp. &*
    *Health Care Employees, a Div. of RWDSU*,
    577 F. Supp. 29 (S.D.N.Y. 1984) ..............................................................................8, 14

*Rombach v. Chang*,
    355 F.3d (2d Cir. 2004).........................................................................................9, 10, 11

*Ross v. Bolton*,
    904 F.2d 819, 823 (2d Cir.1990)...................................................................................10

*Russo v. Bruce*,
    777 F. Supp. 2d 505 (S.D.N.Y. 2011)............................................................................18

*Silsby v. Icahn*,
    No. 12-Civ.-2307-JGK, 2014 WL 1744132 (S.D.N.Y. Apr. 30, 2014)...........................17-18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008)....................................................................................................16

*Tabak v. Canadian Solar Inc.*,
    549 F. App'x 24 (2d Cir. 2013) ...................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................3, 16

*In re UBS AG Sec. Litig.*,
    07-Civ.-11225-RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub*
    *nom.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d
    173 (2d Cir. 2014)......................................................................................................13

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................17, 23

**Statutes and Rules**                                                    **Page(s)**

15 U.S.C. § 77k (1933 Securities Act § 11)................................................ *passim*

15 U.S.C. § 77m ............................................................................................22

15 U.S.C. § 78j (Securities Exchange Act § 10(b)) ......................8, 9, 16, 22

15 U.S.C. ¶¶ 78u-4, *et seq.* (Private Securities Litigation Reform Act) ............................ *passim*

15 U.S.C. § 78u-4(b)(1) ..........................................................................2, 8

15 U.S.C. § 78u-4(b)(2) ................................................................................16

15 U.S.C. § 78u-4(b)(2)(A).........................................................................16

Fed. R. Civ. P. 9(b) .........................................................................................2

Fed. R. Civ. P. 15(c)(1)(B) .....................................................................24, 25

S.E.C. Rule 10b-5 ............................................................................................8

Defendants AmTrust Financial Services, Inc. ("AmTrust" or the "Company"), Barry D. Zyskind and Ronald E. Pipoly, Jr., respectfully submit this memorandum of law, along with the Declaration of Joseph G. Tully ("Tully Dec.") in support of its motion to dismiss the Consolidated Amended Complaint (the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

This lawsuit should be dismissed with prejudice because it seeks cynically to abuse the securities laws and fails utterly to satisfy the demanding pleading requirements of the Private Securities Litigation Reform Act.[1] The private rights of action under the securities laws are, of course, designed to remedy losses caused by an issuer's false and fraudulent statements. But, in this case, Plaintiffs seek to manufacture a lawsuit out of a "short seller's" erroneous attack on AmTrust.[2] The Amended Complaint lacks detailed allegations of any false statement, much less any statement made with fraudulent intent. Nowhere in the Amended Complaint do Plaintiffs point to a restatement of the Company's audited financial results, any financial irregularity, or any adverse government finding (or even an investigation); nor are there any other "badges of fraud" or scandal alleged.

Instead, the Amended Complaint is founded upon the above-referenced report written by GeoInvesting, a short seller with the self-evident intent to profit by driving down the price of

---

[1] 15 U.S.C. ¶¶ 78u-4, *et seq*.

[2] A short seller "speculates that a particular stock will go down in price and seeks to profit from that drop." *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 700 (2d Cir. 1998). A short sale begins with the speculator selling stock that she does not own and instead borrows, usually from the short seller's broker. *See id*. After some period of time has passed, the short seller will purchase the stock in the market and deliver it to the broker, as a repayment of the loan. *See id*. If, over that period, the price of the stock has declined, as the short seller speculated, the short seller can purchase the stock at a lower price than the price at which she sold the borrowed stock and, thereby, profit from the difference between the sale price and the purchase price. *See id*.

AmTrust stock.  As explained below, the GeoInvesting report criticized certain accounting treatment and practices of AmTrust by misconstruing the Company's public filings.  AmTrust has consistently posted positive financial results.  Seeking, however, to succeed in its bet against AmTrust stock, GeoInvesting wrote a report that coupled information in AmTrust's public filings with highly caustic and fictionalized speculation that "things were too good to be true."  One can debate whether it is lawful for shorts to seek to manipulate stock prices in this manner.  But Plaintiffs' lawyers cannot properly convert the self-serving criticism of a short into an alternative reality in which speculation substitutes for the detailed facts needed to satisfy the elevated pleading standards controlling securities claims.  Plaintiffs, however, seek to do just that.

The Amended Complaint is devoid of actual factual investigation.  Rather, to create the appearance of substance, the Amended Complaint parrots the GeoInvesting view; quotes at great length AmTrust's public filings; and liberally sprinkles around the catch phrases of fraud.  Stripped of its rhetoric, however, the Amended Complaint founders for, among other reasons, the following:

***No Adequate Allegations of Falsity:***  The Reform Act and the Federal Rules require that Plaintiffs here plead with specificity the allegedly false statements and explain the reasons such statements are false.  15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b).  The Amended Complaint flunks that test because (a) it quotes AmTrust filings at length and then merely concludes generally that they are false without pleading facts specifying or explaining such falsity; and (b) it attacks and describes with pejoratives AmTrust's accounting disclosures, but precedent teaches that conclusory attacks on accounting treatment do not equal fraud and that, in any event, no fraud claim can stand where, as here, the relevant facts were disclosed to investors.

***Scienter Has Not Been Adequately Pled:*** Perhaps the most glaring flaw in the Amended

Complaint is its failure to satisfy the daunting scienter pleading standard. The Reform Act

elevated the standard for pleading scienter and "[a] complaint will survive . . . only if a

reasonable person would deem the inference of scienter cogent and at least as compelling as any

opposing inference one could draw from the facts alleged." *See Tellabs, Inc. v. Makor Issues &

Rights, Ltd.*, 551 U.S. 308, 324 (2007). The Second Circuit has explained that mere allegations

of accounting violations cannot, standing alone, create the required "strong inference of

fraudulent intent."[3] The Amended Complaint fails to present any facts to create a strong

inference of scienter. There are, for example, no allegations of unusual or suspicious sales of

stock by the named defendants. Indeed, there are no allegations of any stock sales by those

defendants.[4]

***Loss Causation Has Not Been Adequately Pled:*** In *Dura Pharms., Inc. v. Broudo*, 544

U.S. 336 (2005), the Supreme Court held that the loss causation requirement cannot be met

solely by alleging that a company's stock price dropped. *See id.* at 346. Instead, the law requires

that any loss be attributable to a "corrective disclosure." *See, e.g., In re AOL Time Warner, Inc.

Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007). Here, however, the temporary stock price

drop at issue did not result from any corrective disclosure or any new information at all; to the

contrary, the drop corresponded with the GeoInvesting re-packaging (and distorting) of prior

public disclosures. As the Second Circuit held in *Omnicom*, "negative journalistic

characterization of previously disclosed facts does not constitute a corrective disclosure of

---

[3] *See, e.g., In re JP Morgan Chase Sec. Litig.*, No. 02-Civ.-1282-SHS, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007), *aff'd sub nom.*, *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (internal quotation marks omitted)); *infra* at 11-13.

[4] *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011); *infra* at 16-19.

anything but the journalists' opinions." *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).

In sum, the Amended Complaint lacks the factual detail required to satisfy the Reform Act and instead merely mimics the GeoInvesting report, which blatantly distorted the facts in pursuit of financial gain for its authors.

## FACTUAL BACKGROUND

AmTrust underwrites and provides property and casualty insurance in the United States and in international markets, with a focus on workers' compensation insurance. (Am. Compl. ¶ 25.) The Company's workers' compensation insurance policyholders in the United States are, in general, small and middle-market businesses. *See* AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 3, 2014) (Tully Dec., Ex. 1).[5]

Barry D. Zyskind has worked at the Company for approximately 16 years and has served as its Chief Executive Officer for the past nine years. (Am. Compl. ¶ 26.) Ronald E. Pipoly, Jr. is the Company's Chief Financial Officer. (*Id.* ¶ 21.)

### A.      The Company's Results

On November 5, 2013, the Company announced its results for the third-quarter and year-to-date 2013. *See* AmTrust Financial Services, Inc., Current Report (Form 8-K) (Nov. 5, 2013) (Tully Dec., Ex. 2). On that date, the Company announced year-to-date net earned premium of $1.56 billion, up 55.5 percent over year-to-date 2012. *See id.* The Company also announced a diluted earnings-per-share of $2.84, compared to $1.61 per share for year-to-date 2012. *See id.*

---

[5] A Court may take judicial notice of SEC filings. *See, e.g.*, *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009).

In response to this announcement, shares in the Company gained approximately ten percent for the day.[6]

Indeed, it is undisputed that the Company has provided consistent positive results for its shareholders. (Am. Compl. ¶¶ 99-100.) It is, moreover, undisputed that those financial results have been audited by an independent accounting firm.

## B.    The GeoInvesting Report

In light of the Company's positive results, this case lacks any of the earmarks of securities fraud—*i.e.*, there has been no financial impropriety or related adverse government action or scandal. Instead, this case was manufactured by the self-interested market manipulation of a short seller.

On December 12, 2013, just over a month after the Company announced its results for the third quarter, an article appeared on the website www.seekingalpha.com, entitled, "AmTrust Financial Services: A House of Cards?" (Am. Compl. ¶ 59, Ex. J.) The article identified the "The GeoTeam," also known as "GeoInvesting," as its author (the "GeoInvesting Report"). (Am. Compl. ¶ 59, Ex. J.) The article also stated that GeoInvesting was a short seller: "Disclosure: I am short AFSI."[7] There were no actual "facts" revealed in the report; to the contrary, the GeoInvesting Report simply repackaged, in a negative and misleading manner, previously publicly available information about the Company.

Short sellers "have an obvious motive to exaggerate the infirmities of the securities in which they speculate." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012). And that is exactly what GeoInvesting did here. For example, the article

---

[6] "[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).

[7] The copy of the GeoInvesting Report attached to the Amended Complaint as Exhibit J omits this disclosure. A copy of the article with the disclosure visible is annexed as Exhibit 7 to the Declaration of Joseph G. Tully.

authored by GeoInvesting declared by fiat that "[a] cross section of public documents . . . shows that AFSI appears to be excluding losses of wholly-owned subsidiaries in its SEC filings." (Am. Compl. ¶ 60.) Since the posting of the GeoInvesting Report, the Company and the Company's representatives have addressed it claims. On December 16, 2013, for example, the Company held an investor conference, in which Messrs. Zyskind and Pipoly explained that the Company did not conceal losses, as discussed below. (Am. Compl. ¶ 64.) Similarly, Messrs. Zyskind and Pipoly addressed the article during a February 13, 2014 earnings call. (Am. Compl. ¶ 64.)

And from the date of the article's publication—when, according to the Amended Complaint, short sellers allegedly exposed an approximately $300 million hole in the books of AmTrust—the share price of AmTrust has ***increased approximately 25 percent***, from $33.67 to $42.07 per share. On May 30, 2014, A.M. Best confirmed that it had granted AmTrust a "financial strength rating" of "A (Excellent)." *See* Press Release, A.M. Best Company, A.M. Best Comments on the Ratings of AmTrust Financial Services, Inc. Following Announced Transaction With Tower Group (Jan. 10, 2014) (Tully Dec., Ex. 3). According to a press release that announced the rating, the rating reflected, among other things, "AmTrust's solid balance sheet strength." (*Id.*)

## C.    Intercompany Transactions Are Eliminated upon Consolidation

The GeoInvesting Report manufactured from whole cloth the speculation about intercompany transactions. The public disclosures of the Company explain how it manages risk, through the use of reinsurance agreements between entities within its corporate structure. "AmTrust operates eleven domestic U.S. insurance subsidiaries that write policies, take in insurance premiums and pay out losses incurred on those policies." (Am. Compl. ¶ 28.) "AmTrust owns a Bermuda reinsurance subsidiary, AmTrust International Insurance, Ltd.

["AmTrust Bermuda"] . . . which reinsures the bulk of [AmTrust's] US insurance subsidiaries' written premiums." (Am. Compl. ¶ 29.) "Reinsurance is a transaction between insurance companies in which the original insurer, or ceding company, remits a portion of its policy premiums to a reinsurer, or assuming company, as payment for the reinsurer assuming a portion of the insured policies' risk." *See* AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 3, 2014) (Tully Dec., Ex. 1).

Plaintiffs concede that, through intercompany transactions, AmTrust Bermuda cedes losses to the Company's subsidiaries in Luxembourg. (Am. Compl. ¶ 33.) These intercompany transactions occur pursuant to "stop-loss agreement[s]," whereby AmTrust Bermuda cedes "up to $100 million" to AmTrust's subsidiaries in Luxembourg, on an annual basis. (Am. Compl. ¶ 33.) For each year of the purported Class Period, regulatory filings disclosed the amount that AmTrust Bermuda ceded to the Company's subsidiaries in Luxembourg, and the GeoInvesting Report cited to these public disclosures. (Am. Compl. ¶ 76, n.6.) There is no factual basis in the Amended Complaint upon which to base an allegation of falsity as to these disclosures.

Instead, relying on the same regulatory filings, the Amended Complaint compared the losses ceded to the Luxembourg subsidiaries to the losses that AmTrust Bermuda had a right to cede, on an annual basis, pursuant to the stop-loss agreements. (Am. Compl. ¶ 93.) Plaintiffs admit that the "$289.9 million of [alleged] concealed losses from 2010 to 2012 nearly matches the $300 million of loss [*sic*] that may be ceded to Luxembourg subsidiaries over the same three year period." (Am. Compl. ¶ 93.)

The Company's financial statements filed during the purported Class Period expressly disclose that "[a]ll significant transactions and account balances between the Company and its subsidiaries were eliminated during consolidation." *See* AmTrust Financial Services, Inc.,

Annual Report (Form 10-K) (March 1, 2013) (Tully Dec., Ex. 4), p. F-16; AmTrust Financial

Services, Inc., Annual Report (Form 10-K) (March 15, 2012) (Tully Dec., Ex. 5), p. F-15;

AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 15, 2011) (Tully Dec.,

Ex. 6), p. F-15.  And this is consistent with standard accounting practice; a court in this District

has described it as "a matter of standard accounting practice" that "transactions between

consolidated entities would no longer be shown on their consolidated financial statement."  *See*

*Retail, Wholesale, Dep't Store Union, AFL-CIO-CLC v. Nat'l Union of Hosp. & Health Care*

*Employees, a Div. of RWDSU*, 577 F. Supp. 29, 31 (S.D.N.Y. 1984).

**D.       The Complaints**

On February 4, 2014, Plaintiff Mark Harris filed his complaint against the defendants

alleging violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated

thereunder as well as Section 20(a) (the "Harris Complaint").  On February 14, 2014, Plaintiff

David Sears filed his complaint alleging similar causes of action (the "Sears Complaint," and

together with the Harris Complaint, the "Original Complaints").  On July 7, 2014, Plaintiffs filed

the Amended Complaint and asserted for the first time a violation of Section 11 of the 1933

Securities Act relating to an offering of preferred stock in June 2013.

## ARGUMENT

### POINT I.

#### THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE ANY FALSE OR MISLEADING STATEMENT, AN ESSENTIAL ELEMENT UNDER BOTH SECTIONS 10 AND 11

Claims under Sections 10(b) and Section 11 "share a material misstatement or omission

element."  *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67–68

(2d Cir. 2012).  To withstand a motion to dismiss, a complaint that alleges claims under Section

10(b) and Section 11 must both, (1) "specify each statement alleged to have been misleading,"

and (2) "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  It is

also well-settled that heightened pleading requirements apply to Section 11 claims as well as

Section 10(b) claims where the Section 11 claims "are premised on allegations of fraud," as they

are here.[8]  *Rombach v. Chang*, 355 F.3d, 164, 171 (2d Cir. 2004).  The Section 10(b) and 11

claims should be dismissed in their entirety for their failure to allege, with the particularity

required, a false or misleading statement.

A.    **Conclusory References to Public Statements, Without More, Do Not Meet the Stringent Particularity Requirements**

Merely reciting public statements without specifying any portion thereof as false does not

satisfy the heightened pleading requirements for Plaintiffs' Section 10(b) and 11 claims.  But that

is all Plaintiffs have done here.  With respect to the individual defendants, the Amended

Complaint attributes no quotations or specific statements to Messrs. Zyskind and Pipoly.

Instead, the Amended Complaint merely recycles the same conclusory paragraph:

> In an investor conference call that same day, Zyskind and Pipoly
> touted AmTrust's . . . financial performance.  In particular, Pipoly
> and Zyskind discussed the amount of adverse development and
> incurred loss that AmTrust incurred . . . as well as its loss ratios.
> Zyskind and Pipoly also made in depth statements about the reasons
> for AmTrust's losses, loss ratios and net income, and the trends it
> was experiencing for these key metrics.

(*See* Am. Compl. ¶¶ 37, 42, 47.)  But nowhere do Plaintiffs explain what was misleading or how.

The Amended Complaint employs similar boilerplate allegations with respect to alleged

misrepresentations by the Company.  Rather than provide the requisite specificity, the Amended

Complaint recites the same paragraph on multiple occasions, substituting only the relevant year

and dollar amount of reported losses:

---

[8] Plaintiffs' Section 11 claim sounds in fraud because the allegations underlying the 1933 and 1934 Act claims are almost identical.  *Compare, e.g.*, Am. Compl. ¶¶ 168, 171 (Securities Act claim), *with* Am. Compl. ¶¶ 148–50 (Exchange Act claim).

> In the . . . press release and the 10-K, AmTrust understated loss and
> loss adjusted [*sic*] expense . . . because it failed to report . . . losses
> and loss adjusted [*sic*] expenses that were reported by its
> subsidiaries to State and Bermuda insurance regulators, but were
> not included and recognized in AmTrust's . . . year-end
> consolidated financial statements . . . .

(Am. Compl. ¶¶ 40, 45, 50.)  Such allegations are insufficient as a matter of law.

In *Pollio v. MF Global, Ltd.*, the complaint quoted from a series of press releases and other statements the defendants allegedly made during the class period, but the complaint failed to identify the portions of those statements, if any, that were misleading.  608 F. Supp. 2d 564, 570 (S.D.N.Y. 2009).  "On this basis alone," the court held, the "plaintiff's Complaint must be dismissed, because it fails to 'afford defendant[s] fair notice of the plaintiff's claim and the factual ground upon which it is based.'"  *Id*. at 570 (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).

Similarly, in *Rombach v. Chang*, the complaint quoted from a series of the defendants' press releases and then alleged that "various statements made therein were misleading because they failed to disclose or accurately represent the company's integration and liquidity problems." 355 F.3d 164, 172 (2d Cir. 2004).  The court dismissed the complaint and noted that "[a]lthough the complaint catalogs a number of statements made by the individual defendants, nothing in the complaint explains with adequate specificity how those statements were actually false or misleading." *Id.* at 172.

Here, Plaintiffs fail to provide even that level of specificity the courts found unsatisfactory in *MF Global* and *Rombach*.  The Amended Complaint references press releases, annual statements, and investor conference calls, but does not include a single quotation from them, indicate which portion was misleading, or explain how it was misleading.  (Am. Compl. ¶¶ 37, 40, 42, 45, 47, 50.)  Instead, Plaintiffs rely on vague and conclusory allegations.  For

example, the Amended Complaint alleges in conclusory fashion that, during investor conference calls, Messrs. Zyskind and Pipoly "made in depth statements about the reasons for AmTrust's losses, loss ratios and net income." (Am. Compl. ¶¶ 37, 42, 47.) But Plaintiffs never advert to portions of those "in depth statements" that were false. (Am. Compl. ¶¶ 37, 42, 47.) In other words, Plaintiffs have tried to create the illusion of substance by bulking up the Amended Complaint with redundant but hollow allegations. As the court held in *Rombach*, "plaintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so." 355 F.3d at 174.

B.    **Plaintiffs' Vague References to "Accounting Machinations" Also Fail to Satisfy the Pleading Requirements**

Plaintiffs allege that the Company overstated its revenue because the financial statements of the Company excluded losses ceded to and assumed by AmTrust's subsidiaries in Luxembourg through the use of "accounting machinations." (Am. Compl. ¶¶ 5, 6, 95, 105.) Plaintiffs base this allegation on a hypothetical lifted from the GeoInvesting Report, which Plaintiffs simply cut and paste into the Amended Complaint. (*Id.* ¶ 6 n.1.) The allegation fails for at least three reasons: (1) disagreements about accounting treatment are insufficient to support a fraud claim; (2) the Amended Complaint fails to plead with particularity any facts about the alleged manipulation; and (3) the Company disclosed the accounting treatment for intercompany transactions.

1.    **Disagreements About Accounting Treatment Cannot Support a Fraud Claim**

Although the Amended Complaint makes passing references to "accounting machinations" and "accounting manipulation," intended to minimize reported losses, the Amended Complaint does not allege that the Company restated the losses it reported during the purported Class Period. Further, the Amended Complaint does not allege that relevant

regulatory authorities disapproved of the accounting treatment. Finally, Plaintiffs fail to acknowledge that the accounting treatment at issue was subject an independent audit.

Blatantly misrepresenting the Company's public statements, the GeoInvesting Report sought to succeed in its short seller bet against the Company by alleging that it improperly applied accounting standards. (Am. Compl. ¶ 91.) The Amended Complaint parrots that allegation but offers none of the detail or factual investigation required by the Reform Act. (*Id.* ¶ 91.) To the extent one, giving the benefit of the doubt, could characterize these as disagreements about proper accounting treatment, they are nonetheless not actionable. The relevant case law makes it manifest that disagreements about accounting treatment cannot form the basis of a securities claim. In *In re JP Morgan Chase Sec. Litig.*, the complaint alleged, among other things, that the defendants failed to disclose certain related party transactions, in possible violation of GAAP. *See* 02-Civ.-1282-SHS, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007), *aff'd sub nom.*, *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009). The court held that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim . . . ." *See id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (internal quotation marks omitted)). The court found it significant that the complaint lacked an allegation that the SEC had reached any adverse findings with respect to the company's filings or an allegation that the corporate defendant was forced to restate its financial statements due to the alleged accounting irregularities. *See id.* In the court's view, the absence of such allegations suggested that "reasonable accountants could differ" as to the proper accounting treatment of the related party transactions. *See id.*

Similarly, in *In re UBS AG Sec. Litig.*, the court concluded that the failure to allege that the corporate defendant restated its financials "significantly undercut[]" the plaintiffs' allegations. *See* 07-Civ.-11225-RJS, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). For this reason alone, the Amended Complaint should be dismissed.

## 2. The Amended Complaint Fails to Plead With Particularity Any Facts About the Alleged Manipulation.

The Amended Complaint's vague references to "undisclosed accounting machinations" are insufficient to satisfy the Reform Act. In *Tabak v. Canadian Solar Inc.*, the court considered facts similar to the facts alleged here. *See* 549 F. App'x 24, 28 (2d Cir. 2013). The plaintiffs had alleged that the defendants overstated revenue, not through "accounting manipulation," but through "improperly recorded sham transactions." *See id.* The court held that "[w]hile the Plaintiffs allege that the statements were fraudulent because they were predicated on 'sham transactions,' the Plaintiffs do not state with particularity any facts about these transactions to support a conclusion that they were sham transactions." *See id.*

Here, rather than state with particularity any facts about AmTrust's accounting methodology to support a conclusion that it was fraudulent, the Amended Complaint simply cuts and pastes patently false allegations from the GeoInvesting Report. (Am. Compl. ¶¶ 91-97.) But even Plaintiffs must admit that the allegations in the GeoInvesting Report were merely what "Geoinvesting [*sic*] hypothesized," and, therefore, they cannot state "at this time whether or not this explanation really was the actual accounting manipulation that AmTrust utilized." (Am. Compl. ¶ 6 n.1.) This is simply a vain and improper attempt to turn the report of a short seller into a federal securities claim.

3.     **The Company Disclosed the Accounting Treatment for Intercompany Transactions**

Although Plaintiffs use liberally the argot of fraud, the accounting treatment at issue was fully disclosed in public filings, thus negating any possible allegations of falsity or fraud.

Throughout the Class Period, the annual statements of the Company disclosed that transactions between its subsidiaries were eliminated or offset when the company consolidated or combined the financials results of those subsidiaries into the parent company. Specifically, the SEC 10-Ks filed by the Company disclosed as follows:

> The consolidated financial statements of the Company have been prepared in conformity with accounting principles generally accepted in the United States of America. The consolidated financial statements include the accounts of the Company and its domestic and foreign subsidiaries . . . . **All significant transactions and account balances between the Company and its subsidiaries were eliminated during consolidation.**

*See* AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 1, 2013) (Tully Dec., Ex. 4), p. F-16; AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 15, 2012) (Tully Dec., Ex. 5), p. F-15; AmTrust Financial Services, Inc., Annual Report (Form 10-K) (March 15, 2011) (Tully Dec., Ex. 6), p. F-15 (emphasis added). A court in the Southern District has described it as "a matter of standard accounting practice" that "transactions between consolidated entities would no longer be shown on their consolidated financial statement." *Retail, Wholesale, Dep't Store Union, AFL-CIO-CLC v. Nat'l Union of Hosp. & Health Care Employees, a Div. of RWDSU*, 577 F. Supp. 29, 31 (S.D.N.Y. 1984).

The Amended Complaint notes that AmTrust's Bermuda subsidiary "cedes up to $100 million [in losses] each year . . . through a stop-loss agreement." (Am. Compl. ¶ 93.) The Amended Complaint notes further that the $289.9 million in allegedly concealed losses "nearly matches the $300 million of loss that may be ceded to Luxembourg subsidiaries" pursuant to the stop-loss agreement. (*Id.* ¶ 93.) Thus, the Company has not "hidden" any losses, but rather has

properly eliminated a transaction between subsidiaries—losses ceded by AmTrust Bermuda and assumed by the subsidiaries in Luxembourg—as part of the consolidation process under GAAP. Plaintiffs' accounting allegations should be dismissed.

The Amended Complaint conspicuously ignores the disclosure regarding the elimination of intercompany transactions and, instead, complains that the Company eliminated losses through "accounting machinations." (Am. Compl. ¶¶ 5, 6, 95, 105.) But rather than detail the alleged "accounting machinations"—or, to use a less inflammatory phrase, accounting methodologies—that might explain those eliminated losses, the Amended Complaint merely notes that US GAAP would not allow AmTrust to use equalization reserves to eliminate or offset the ceded losses. (*Id.* ¶ 34.) Based on that fact alone, the Amended Complaint concludes: "Thus, any losses incurred by or ceded to the Luxembourg subsidiaries must be recognized as losses in AmTrust's consolidated financial statements." (*Id.* ¶ 34.)

But the Amended Complaint creates a false dichotomy. In Plaintiffs' version, because the Company cannot use equalization reserves to offset losses ceded from one subsidiary and assumed by another, if the Company offsets ceded losses upon the consolidation of its financial statements, the Company must have committed fraud. (Am. Compl. ¶ 34.) This fails, however, to address the fact that the Company disclosed the accounting treatment of intercompany transactions and, specifically, disclosed the fact that significant transactions between subsidiaries were eliminated during consolidation. Therefore, Plaintiffs' accounting allegations and claims under Sections 10(b) and 11 should be dismissed.

**THE AMENDED COMPLAINT FAILS TO ADEQUATELY
PLEAD THE REMAINING ELEMENTS OF A SECTION 10B CLAIM**

In addition to alleging falsity with the requisite particularity, to state a claim under

Section 10(b), Plaintiffs must also satisfy the Reform Act's pleading standards as to (1) scienter,

and (2) loss causation. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S.

148, 157 (2008). The Amended Complaint fails to allege adequately either of these required

elements.

**A.**    **Plaintiffs Have Not Pled Scienter Adequately**

The Reform Act requires a plaintiff to "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

4(b)(2). In other words, the scienter allegations "must give 'rise to a strong inference' of

fraudulent intent." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (citing 15

U.S.C. § 78u-4(b)(2)(A)). In *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, the Supreme Court set

forth the proper test for determining whether a complaint sufficiently pleads a "strong inference"

of scienter. 551 U.S. 308, 314 (2007). "To qualify as 'strong,' . . . an inference must be more

than merely plausible or reasonable – it must be cogent and at least as compelling as any

opposing inference of nonfraudulent intent." *Id*. at 309. In performing this comparative

analysis, the court "must consider not only inferences urged by the plaintiff . . . but also

competing inferences rationally drawn from the facts alleged." *Id*. at 314. Importantly,

"omissions and ambiguities count against inferring scienter . . . ." *Id*. at 325. Finally, it is well-

established law in this Circuit that "a plaintiff cannot base securities fraud claims on speculation

and conclusory allegations." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). And that tenet

should apply with particular force here, where the conclusory allegations originated in the self-serving report of a short seller.

In the Second Circuit, conclusory "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Instead, "[o]nly where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." *See id.* (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)) (internal citations omitted). There are no such allegations in the Amended Complaint.

The Amended Complaint's scienter allegations are woefully inadequate. With respect to the individual defendants, the Amended Complaint alleges that Messrs. "Zyskind and Pipoly both receive bonuses and incentive compensation tied to AmTrust's reported profit levels creating a strong motive for them to conceal AmTrust's losses." (Am. Compl. ¶ 132.) "It is well established," however, "that 'the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter.'" *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 350 (S.D.N.Y. 2011) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995)). To plead that Messrs. Zyskind and Pipoly had the requisite motive and opportunity to commit fraud, the Amended Complaint would need to show "a concrete and personal benefit" to them "resulting from the fraud." *Kalnit*, 264 F.3d at 139. But Plaintiffs do nothing to allege such a concrete and personal benefit.

Rather conspicuously, Plaintiffs do not even allege that Messrs. Zyskind or Pipoly sold shares in the Company during the purported Class Period. In *Silsby v. Icahn*, the court held that the plaintiffs had not alleged "any concrete and personal benefit" to the defendants because,

among other things, the "plaintiffs [did] not allege any sales of stock during the Class Period." No. 12-Civ.-2307-JGK, 2014 WL 1744132, at *13 (S.D.N.Y. Apr. 30, 2014).[9]

Not only did Messrs. Zyskind and Pipoly retain their shares in the Company during the purported Class Period, both of them *increased their holdings* over the purported Class Period.[10] In *In re Keyspan Corp. Sec. Litig.*, the court described the purchase and retention of company shares by the defendants—including the company's Chief Executive Officer—as "inconsistent" with the allegation that defendants "harbored information" about the company's true financial health. *See* 383 F. Supp. 2d 358, 383-84 (E.D.N.Y. 2003).

With respect to the Company, Plaintiffs allege that "AmTrust had a motive to conceal its losses and inflate its net income because it completed a number of stock, note, and bond offerings during the Class Period." (Am. Compl. ¶ 122.) Plaintiffs allege further that, "during the Class Period, AmTrust obtained over $600 million of equity and debt financing by understating its losses and overstating its income." (Am. Compl. ¶ 131.)

"The Second Circuit has rejected allegations such as a desire for the corporation to appear profitable as 'insufficient' to plead motive." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 262 (S.D.N.Y. 2003). Thus, a "bald allegation that defendants committed fraud out of a desire to raise capital for the corporation does not give rise to a strong inference of fraudulent intent." *Russo v. Bruce*, 777 F. Supp. 2d 505, 520 (S.D.N.Y. 2011).

Plaintiffs allege also that AmTrust's lenders "required it to maintain financial metrics that would have been violated had the losses not been concealed." (Am. Compl. ¶ 123.) But a

---

[9] Insider sales of stock may be indicative of scienter only if the trades are unusual or suspicious in timing or amount. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011).

[10] *Compare* Form 4 filed on behalf of Pipoly, dated November 18, 2011, *with* Form 4 filed on behalf of Pipoly, dated January 17, 2014; *compare* Form 4 filed on behalf of Zyskind, dated February 17, 2012, *with* Form 4 filed on behalf of Zyskind, dated February 19, 2014. (*See* Tully Dec., Ex. 8)

company's need "to comply with various financial covenants in its loan agreements is similarly deficient as a motive allegation as they are common to most companies." *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 867 (S.D.N.Y. 2011), *aff'd sub nom., Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). Therefore, AmTrust's "alleged desire[] to raise additional capital" or its desire "to maintain compliance with the financial covenants of a company loan agreement are . . . inadequate to support an allegation of intent to commit fraud." *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 265 (S.D.N.Y. 2004).

B.    **The Amended Complaint Does Not Allege Loss Causation Adequately**

A key requirement to plead loss causation is the existence of a corrective disclosure that triggered the alleged loss in share value. *See, e.g., In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007). Merely alleging the legal conclusion that loss causation exists does not pass muster. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). The Second Circuit has held that "[a] negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). Based on this precedent, there is no corrective disclosure here because the GeoInvesting Report is exactly what the Second Circuit rejected. Plaintiffs, therefore, have failed to allege loss causation adequately. *See In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512-13 (2d Cir. 2010).

"Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). To stave off dismissal under *Dura*, a complaint must do more than merely allege that a company's shares declined substantially in value after purchase. *See Dura*, 544

-19-

U.S. at 343.  Instead, the complaint must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173.  A complaint can make this showing "by alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re AOL Time Warner, Inc. Sec. Litig*., 503 F. Supp. 2d at 677.

Plaintiffs allege that the publication of the GeoInvesting Report resulted in a twelve percent drop in the price of the Company's stock.  (Am. Compl. ¶ 61.)  As Plaintiffs admit, however, the article drew "on financial information AmTrust's subsidiaries filed with State insurance commissioners in the U.S., and in Bermuda." (*Id.* ¶ 6.)  The article expressly cites, as its sole sources, "a cross section of *public documents* (AFSI SEC filings, Statutory financial filings by AFSI subsidiaries and Credit Rating information)." (*Id.* ¶ 60 (emphasis added).)  In other words, the article contained erroneous observations about AmTrust's accounting treatment of intercompany transactions that were developed through a review of previously released, publicly available information.

As a matter of law, such a disclosure cannot satisfy the loss causation requirement because it did not reveal *new information*.  In *In re Omnicom Group, Inc. Sec. Litig*., a case with facts similar to the ones present here, the Second Circuit held that a "negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom Group, Inc. Sec. Litig*., 597 F.3d 501, 512 (2d Cir. 2010).  In *Omnicom*, the plaintiffs had alleged that information contained in a *Wall Street Journal* article constituted a partial corrective disclosure, which caused the market price of the company to drop.  *See  id.* at 513. The article at issue in *Omnicom* raised concerns about,

among other things, the corporate defendant's "aggressive accounting strategy" with respect to the elimination of losses through intercompany transactions. *See id.* at 511. The court concluded that the article merely cast previously known facts in a negative light, because the "accounting method to remove losses from [the corporate defendant's] books" had been previously disclosed and was known to the market. *Id.* at 512.

Here, the GeoInvesting Report was nothing more than a negative characterization of the loss and earnings information previously disclosed to the market in various financial statements. (Am. Compl. ¶ 60). And, as in *Omnicom*, the accounting method used to eliminate intercompany transactions had been disclosed to the market prior to the alleged corrective disclosure.[11] Therefore, the GeoInvesting report disclosed no new facts to the market and cannot serve as a corrective disclosure of the alleged "accounting machinations." *See id.* at 512-13; *see also In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, No. 13-Civ.-755-KBF, 2014 WL 585658, at *14 (S.D.N.Y. Feb. 14, 2014) (dismissing action where alleged corrective disclosure, a posting to a financial news website, merely critiqued information company had previously disclosed).

### POINT III.

### THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM UNDER SECTION 11 OF THE SECURITIES ACT

The Amended Complaint asserts, for the first time, a claim under Section 11 of the Securities Act based on allegations that a registration statement and prospectus filed on June 5, 2013, in connection with the issuance of Series A preferred stock (the "Preferred Offering"), contained false and misleading statements. (Am. Compl. ¶ 21.) The Amended Complaint alleges that these disclosures understated loss and loss adjustment expense and overstated net income. (Am. Compl. ¶¶ 54, 168.) As shown above, the Section 11 claim should

---

[11] *See infra* pp. 14-15.

be dismissed in its entirety for its failure to allege, with the particularity required, a false or misleading statement.[12]  The Section 11 claim also fails because it is untimely.

Pursuant to the Securities Act, "[n]o action shall be maintained to enforce any liability created under section [11] . . . unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.  Compliance with this statute of limitation constitutes a substantive element of a Section 11 claim and so Plaintiffs must affirmatively plead facts sufficient to demonstrate a claim's timeliness.  *See Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90-Civ.-5638-JFK, 1992 WL 296406, at *8 (S.D.N.Y. Oct. 7, 1992).

Here, the information contained in the alleged corrective disclosure was available as early as March 1, 2013, when the company filed its 2012 10-K.  Plaintiffs, however, did not assert a Section 11 claim until ***17 months later***, or ***5 months after*** the statute of limitation had expired.  And, as discussed below, because the limitations period was not tolled and the Section 11 claim does not relate back to the filing of the Original Complaints, it is time barred.

**A.**     **The GeoInvesting Report Relied Upon Public Financial Reporting Available More than a Year Before the Filing of the Amended Complaint.**

A split exists in this Circuit as to which of two standards governs the start of the limitations period.   With the "inquiry notice" standard, the one-year limitations period will begin to run when circumstances "would suggest to an investor of ordinary intelligence the probability that she has been defrauded . . . ." *LC Capital Partners, L.P. v. Frontier Ins. Group*, 318 F.3d 148, 154 (2d Cir. 2003) (internal citations omitted).  Under the alternative "discovery rule" standard, "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation."

---

[12] *See infra* pp. 8-15.

-22-

*Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).[13]  Whichever rule applies, Plaintiffs had

either inquiry notice of the alleged misrepresentations or should have discovered them through

reasonably diligent efforts by virtue of AmTrust's substantial disclosures of its losses to the SEC

and insurance regulators in the years 2010 through 2012, which disclosures Plaintiffs cite as the

support for their allegations.  (Am. Compl. ¶¶ 7, 35, 38, 40-41, 43, 45-46, 48 & 50).  And

Plaintiffs admit also that the GeoInvesting Report that allegedly revealed the alleged

irregularities was based on that same information that was publicly available as of March 1,

2013.[14]

    The Section 11 claim is, therefore, time barred because Plaintiffs asserted it on July 7,

2014, but were required to bring it as early as March 1, 2014 (one year after the final 2012 10-K

was filed) or, at the very latest, June 5, 2014 (one year after the date the Preferred Offering

prospectus and registration statement were filed).  *See e.g.*, *NECA-IBEW Pension Trust Fund v.

Bank of Am. Corp.*, No. 10-Civ.-440-LAK-HBP, 2013 WL 620257, at *9 (S.D.N.Y. Feb. 15,

2013) (denying motion for leave to amend Section 11 allegations, reasoning that the information

supporting them was publicly available in the company's 10-Ks and 10-Qs).

## B.    <u>The Statute of Limitations Was Not Tolled.</u>

    Plaintiffs' assertion that the Section 11 statute of limitations was tolled is wrong for two

reasons.  (Am. Compl. ¶ 176.)  *First*, the Supreme Court has held that "when a limitations period

is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or

---

[13] It is not entirely clear whether the *Merck* "discovery rule" also applies in this Circuit to Section 11 claims brought under the 1933 Securities Act.  *Compare In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 370-71 n.39 (S.D.N.Y. 2011) (applying *Merck* to claims under Sections 11 and 12(a)(2) of the Securities Act; *with In re IndyMac Mortgage-Backed Securities Litig.*, 793 F. Supp. 2d 637, 648 (S.D.N.Y. 2011) (holding that *Merck* is limited to claims brought under the Exchange Act), *aff'd in part sub nom.*, *Police & Fire Retirement Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013), *cert. granted*, 134 S. Ct. 1515 (2014).

[14] And the GeoInvesting Report acknowledges as much.  *See* Am. Compl. ¶ 60, Exhibit J, (citing to "a cross section of *public documents* (AFSI SEC filings, Statutory financial filings by AFSI subsidiaries and Credit Rating information) . . . ." (emphasis added).

should have been, discovered by the plaintiff." *See Credit Suisse Securities (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012). Here, the allegedly concealed facts were available from public sources. *Second*, courts are reluctant to toll the statute of limitations for newly added Section 11 claims where the defendants did not have notice of them. *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 396 (E.D.N.Y. 2013). Such is the case here.

**C.** **The Recently Added Section 11 Claim Does Not Relate Back to the Filing of the Original Complaints.**

Pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Claims added to an amended pleading will not relate back when those claims are "based upon new facts and different transactions." *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992)

In *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, the plaintiff filed an amended complaint that asserted, for the first time, a Section 11 claim based on alleged misrepresentations made in an August 1999 registration statement. *See* No. 03-MD-1529-LMM, 2005 WL 1679540, at *8 (S.D.N.Y. July 18, 2005). The plaintiff asserted that the Section 11 claim related back to the date of the original complaint because the original complaint challenged statements made in SEC filings, which were later incorporated by reference into the August 1999 registration statement. *See id.* at *9. The court held, however, that the August 1999 registration statement was "not at issue" in the original complaint because the original complaint did not mention the registration statement. *See id.* at *8. The court held also that the statements made in the earlier SEC filings "involve[d] different transactions" than the 1999 registration statement *See id.* Finally, the court noted that the "very incorporation of the challenged statements into the

-24-

August 1999 Registration Statement constitutes a 'new fact,' not alleged in the" original complaint. *See id.*

Here, the Preferred Offering was "not at issue" in the Original Complaints, because the Original Complaints mentioned neither the registration statement nor even the Preferred Offering. Applying the same tactic as the plaintiff in *Adelphia*, Plaintiffs allege that the "registration statement and prospectus incorporated by reference AmTrust's financial statements filed with the SEC on Form 10-K for fiscal years [sic] 2012." (Am. Compl. ¶ 52.) As the court held in *Adelphia*, however, the filing of that 10-K represented a separate transaction from the filing of the registration statement and prospectus. *See Adelphia*, 2005 WL 1679540, at *8. Therefore, under Federal Rule of Civil Procedure 15(c)(1)(B), the Section 11 claim asserted does not relate back to the Original Complaints and is time-barred as a matter of law.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice.[15]

Respectfully submitted, this 11th day of August, 2014.

/s/ Todd R. David
Todd R. David
John D. Roesser
Jessica P. Corley (*Admitted Pro Hac Vice*)
Louis A. Russo
Joseph G. Tully
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*Counsel for Defendants*

---

[15] Because the Amended Complaint fails to plead a primary violation, the Section 20(a) claim should also be dismissed with prejudice. *See, e.g., Abely v. Aeterna Zentaris Inc.*, No. 12-Civ.-4711-PKC, 2013 WL 2399869, at *20 (S.D.N.Y. May 29, 2013.