UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re AmTrust Financial Services, Inc. Securities Litigation** | No. 1:14-cv-00736-VEC |
| | <u>CLASS ACTION</u> |
| **THIS DOCUMENT RELATES TO:** | ORAL ARGUMENT REQUESTED |
| All Actions | |

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# <u>PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT</u>

ALSTON & BIRD LLP
Todd R. David
Jessica P. Corley (*Admitted Pro Hac Vice*)
Joseph G. Tully
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................1

    POINT I. THE SAC DOES NOT ADEQUATELY ALLEGE ANY FALSE OR MISLEADING
    STATEMENT ........................................................................................................................1

        A. The SAC Flunks the Reform Act's Test for Pleading Falsity .......................................1

        B. Disagreements About Accounting Treatment Cannot Support a
        Fraud Claim .....................................................................................................................5

        C. AmTrust Disclosed the Accounting Treatment for Intercompany Transactions .....8

    POINT II. THE SAC DOES NOT ADEQUATELY PLEAD THE REMAINING ELEMENTS OF A
    SECTION 10(B) CLAIM .......................................................................................................9

        A. Plaintiffs Have Not Pled Scienter Adequately .............................................................9

            1. The SAC Fails to Allege the Individual Defendants had Access to Reports
            that Contradicted Their Public Statements...........................................................9

            2. Motives Common to All Companies Cannot Support an Allegation of
            Scienter.................................................................................................................10

            3. The "Core Operations" Theory, Without More, Cannot Support an
            Allegation that Individual Defendants Had the Requisite Scienter ....................11

         B. The Amended Complaint Does Not Allege Loss Causation Adequately....................12

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ..................................................................................................3

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
  No. 13-CV-5586 VEC, 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014)
  (Caproni, J.) ..............................................................................................................2, 12, 13

*Board of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom.*, *Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) ..................................................................................11

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996)....................................................................................................9

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012)......................................................................................................2

*City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Co.*,
  655 F. Supp. 2d 262 (S.D.N.Y. 2009).....................................................................................8

*Decker v. Massey–Ferguson, Ltd.*,
  681 F.2d 111 (2d Cir.1982).....................................................................................................4

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ..................................................................................................2

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)..............................................................................11, 12

*Ho v. Duoyuan Global Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012).....................................................................................3

*In re Advanced Battery Technologies, Inc. Sec. Litig.*,
  No. 11 CIV. 2279 CM, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) .............................3, 10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  93 F. Supp. 2d 424 (S.D.N.Y. 2000).....................................................................................11

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006).....................................................................................7

*In re Bear Stearns Cos., Inc. Sec. Derivative and ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011).....................................................................................5

| CASES | PAGE(S) |
|---|---|
| *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158 (S.D.N.Y. 2003) aff'd, 113 F. App'x 427 (2d Cir. 2004) | 4 |
| *In re Gen. Elec. Sec. Litig.*, No. 75527, 1995 WL 590639 (S.D.N.Y. Oct. 4, 1995) *aff'd sub nom. Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) | 2 |
| *In re JP Morgan Chase Sec. Litig.*, No. 02 CIV. 1282 SHS, 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) *aff'd sub nom. ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) | 5, 7, 10 |
| *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) | 3, 5, 6, 7 |
| *In re MicroStrategy, Inc. Sec. Litig.*, 115F. Supp. 2d 620 (E.D. Va. 2000) | 6, 7 |
| *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010) | 12 |
| *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290 (S.D.N.Y. 1999) | 6 |
| *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-CV-9456 JSR, 2014 WL 2839440 (S.D.N.Y. June 23, 2014) | 10 |
| *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193 (E.D.N.Y. 2000) | 11 |
| *In re Tyco Int'l, Ltd.*, No. 02-266-B, 2004 WL 2348315 (D.N.H. Oct. 14, 2004) | 3 |
| *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y. 2013) | 3, 10 |
| *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) | 2, 5, 7, 9 |
| *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287 (S.D.N.Y. 2010) | 2 |
| *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) | 2 |

| **CASES** | **PAGE(S)** |
|---|---|
| *Russo v. Bruce*, 777 F. Supp. 2d 505 (S.D.N.Y. 2011) | 10-11 |
| *S.E.C. v. Price Waterhouse*, 797 F. Supp. 1217 (S.D.N.Y.1992) | 4, 7 |
| *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995) | 5 |
| *Stein v. Tangoe, Inc., et al.*, Index No. 13-CV-00286, 2014 U.S. Dist. LEXIS 137966 (D. Conn. Sept. 30, 2014) | 13 |

**Statutes**

| | |
|---|---|
| 15 U.S.C. § 78u–4(b)(1) (Private Securities Litigation Reform Act) | 2 |
| 15 U.S.C. § 78j (Securities Exchange Act § 10(b)) | 2, 8 |
| 15 U.S.C. § 77k (1933 Securities Act § 11) | 2 |

INTRODUCTION

Defendants' Motion established that Plaintiffs failed to satisfy the demanding requirements of the Reform Act. Lacking legally recognized indicia of fraud, Plaintiffs seek to manufacture a case out of a brief drop in stock price and a critical report by a short seller, GeoInvesting, whose report was motivated by a desire to profit from its bet against the Company. Plaintiffs' mantra, parroting the short seller, is that AmTrust is "too good to be true." (SAC ¶ 157.) The law currently allows such speech from short sellers, but the securities laws require detailed factual pleading rather than the unvarnished, negative speculation upon which the SAC is based.[1]

GeoInvesting's hatchet job notwithstanding, AmTrust is a highly respected company. Just last month, *Forbes* named AmTrust the "best-managed company in the insurance industry." *See* Liyan Chen, *America's Best-Managed Companies*, FORBES, Dec. 29, 2014, at 42. In addition, although briefly lower after the short seller's attack, the Company's stock price has steadily risen in the past year. From the alleged end of the Class Period to the date of this filing, AmTrust's share price has increased approximately 49 percent, from $33.67 to $50.11 per share. It is worth noting that the stock price's rebound occurred after the critiques levied by the GeoInvesting Report and this suit were known to the market.

ARGUMENT
POINT I.
THE SAC DOES NOT ADEQUATELY
ALLEGE ANY FALSE OR MISLEADING STATEMENT

**A.     The SAC Flunks the Reform Act's Test for Pleading Falsity**

Plaintiffs base their theory of liability on GeoInvesting's conclusory allegations

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in Defendants' Motion to Dismiss (ECF No. 43) (cited herein as "Defendants' Motion" or "Def. Mem.").

respecting Defendants' accounting.² As Defendants' Motion demonstrated, courts have flatly rejected generalized allegations of improper accounting, even prior to the Reform Act, because criticisms of management's subjective accounting judgments are "fraud by hindsight" and not actionable. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627-28 (7th Cir. 1990); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010); *In re Gen. Elec. Sec. Litig.*, No. 75527, 1995 WL 590639, at *4 (S.D.N.Y. Oct. 4, 1995) *aff'd sub nom. Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996). In sum, "Plaintiffs cannot rest on their say-so that . . . statements are fraudulent; they must explain why," and if they fail to do so, "they fail to plead [fraud] with the requisite particularity." *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004); 15 U.S.C. § 78u–4(b)(1); *see also Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 VEC, 2014 WL 6466994, at *6 (S.D.N.Y. Nov. 18, 2014) (Caproni, J.) (setting forth standards).

The opposition brief argues that "Courts routinely have found sufficient evidence of falsity [where] allegations that the aggregate revenue or profit of an issuer's individual subsidiaries' financial statements filed with regulators materially differed from the consolidate [sic] revenues reported to the SEC." (Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss at 11 (ECF No. 45) (cited herein as "Pl. Mem.").) If courts had "routinely" reached that conclusion, one would expect Plaintiffs to cite a case with such facts, but Plaintiffs fail to do so. Plaintiffs rely on cases in which the plaintiffs alleged that the **same entity** had reported

---

² Under either Section 10(b) or Section 11, a plaintiff must do more than attack a defendants' accounting in conclusory terms; rather, there must be specific and detailed allegations of fraud. *See, e.g., City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67-68 (2d Cir. 2012). Moreover, Defendants' Motion established that Plaintiffs' Section 10(b) and Section 11 claims both sound in fraud, and, therefore, the heightened pleading standards apply to both claims. (Def. Mem. at 11 n.9.) Plaintiffs do not dispute this in their opposition brief.

materially different results in separate jurisdictions. *See Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 568 (S.D.N.Y. 2012) (allegation of material disparity between results subsidiary reported in China and United States); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 125 (S.D.N.Y. 2013) (allegation subsidiary reported "drastically different" results in China and United States); *In re Advanced Battery Technologies, Inc. Sec. Litig.*, No. 11 CIV. 2279 CM, 2012 WL 3758085, *2 (S.D.N.Y. Aug. 29, 2012) (allegation of wide discrepancy between filings parent company made with domestic and Chinese regulators).[3] **Here, in contrast to the cases cited in opposition, Plaintiffs have not alleged that the Company or its individual subsidiaries reported different results in different jurisdictions.**[4]

The SAC fails to allege any facts about the alleged fraud with the particularity the Reform Act requires. In conclusory fashion, the SAC "alleges AmTrust violated US GAAP by misclassifying . . . $290 million of L/LAE as non-underwriting losses during the consolidation process . . . ." (Pl. Mem. at 4.)

Here, as in *In re Marsh*, dismissal is appropriate because Plaintiffs have failed "to sufficiently plead a violation of GAAP or the existence of accounting fraud." *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452, 477 (S.D.N.Y. 2006). "The failure therefore—in an amended consolidated complaint, no less—to allege in any cognizable respect whatever how the . . . accounting practices were improper, let alone fraudulent, or how the internal accounting controls were fraudulently misrepresented, is fatal to

---

[3] Plaintiffs' other cases do not involve allegations that an entity reported inconsistent results and have no bearing on the issues here. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 340 (5th Cir. 2002); *In re Tyco Int'l, Ltd.*, No. 02-266-B, 2004 WL 2348315, *9-10 (D.N.H. Oct. 14, 2004).

[4] Plaintiffs are comparing apples to oranges in contrasting line items on the filings of the Bermuda entity, issued on a statutory accounting basis, with line items on the consolidated financials of the Company, issued on a GAAP basis. The line items would not and should not match for that reason. *See* AmTrust Financial Services, Inc., Annual Report (Form 10-K) (Mar. 3, 2014) (Tully Dec., Ex. A), p. F-65.

those claims." *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160 (S.D.N.Y. 2003) aff'd, 113 F. App'x 427 (2d Cir. 2004).

Moreover, any violation must be palpable for it to even possibly be considered fraud (assuming the other elements of a claim can be satisfied). *See, e.g.*, *S.E.C. v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y.1992). Plaintiffs stumble on the very first hurdle to stating a claim. Nowhere in their brief do Plaintiffs specify how and why any GAAP provision was violated. **Indeed, Plaintiffs' opposition brief fails to cite any GAAP provisions at all.**

In their opposition brief, Plaintiffs claim that the SAC identifies "the specific GAAP AmTrust violated. ¶¶ 144-145." (Pl. Mem. at 12.) A review of paragraphs 144 and 145, however, reveals that those paragraphs cite two items, neither of which qualifies as a provision of GAAP. Instead, the items cited merely pronounce broad accounting concepts and guidelines. But "allegations concerning the violation of generalized accounting principles requiring adequacy and fairness of disclosure, a conservative approach, complete financial information, and understandable methods of reporting" do not satisfy the heightened pleading standard. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir.1982). And even if the items cited did qualify as GAAP, Plaintiffs fail to specify how Defendants violated them.

With respect to the first item Plaintiffs cite, a "Statement of Financial Accounting Concepts," the Financial Accounting Standards Board's website states that a "Statement of Financial Accounting Concepts does not establish generally accepted accounting standards."[5] In addition, in *In re Marsh*, the court held the plaintiff could not rely on a Statement of Financial Accounting Concepts to plead a GAAP violation. *See* 501 F. Supp. 2d at 477.

The other item cited, Regulation S-X, similarly fails to qualify as a GAAP provision.

---
[5] http://www.fasb.org/jsp/FASB/Page/SectionPage&cid=1176157086176&pid=1176156941003

There are "19 different GAAP sources." *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995). The list does not include SEC regulations or rules. *See In re Bear Stearns Cos., Inc. Sec. Derivative and ERISA Litig.*, 763 F. Supp. 2d 423, 467 (S.D.N.Y. 2011).

The court in *In re Marsh* dismissed accounting fraud claims because the plaintiff failed to provide "citations to GAAP provisions prohibiting [the defendant's] accounting practices, or reference to any cases finding violations of GAAP on the basis of actions similar to those alleged by Plaintiffs." *See* 501 F. Supp. 2d at 477. Here, dismissal is also warranted because Plaintiffs fail to identify the provision of GAAP violated or to cite any case where the court upheld the theory of fraud articulated in the SAC.

B.  **Disagreements About Accounting Treatment Cannot Support a Fraud Claim**

Under the law of this Circuit, allegations of "accounting irregularities, standing alone, cannot support a securities fraud claim." *In re JP Morgan Chase Sec. Litig.*, No. 02 CIV. 1282 SHS, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) *aff'd sub nom. ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). And the failure to allege a restatement, an external investigation or other "hallmarks of accounting fraud" undercuts any attempt to plead the existence of such fraud. *See In re Marsh*, 501 F. Supp. 2d at 477. Here, the SEC reviewed AmTrust's accounting for the Class Period and did not require a restatement. (Def. Mem. at 7-9.)

In their opposition brief, Plaintiffs claim that the "SEC recently required AmTrust to admit that its financial statements contained material errors which required correction." (Pl. Mem. at 13.) Plaintiffs' assertion of an admission of a material error is, simply stated, false. The SEC asked AmTrust to provide a "materiality analysis" to support its conclusion that

reclassifying certain ceding commissions did not require a restatement. (Def. Mem. at 8.) AmTrust provided a detailed response, explaining why "the reclassification of ceding commission . . . was not material in relation to [AmTrust's] financial statements taken as a whole." Letter from R. Pipoly, Jr. to a SEC Sr. Asst. Chief Accountant (Apr. 8, 2014) (Tully Dec., Ex. B at 2); *see also* Def. Mem. at 8.

AmTrust completed its response with a June 20, 2014 letter, and, three days later, the SEC completed its review. (Def. Mem. at 8.) In other words, Plaintiffs are blatantly misstating facts of public record. AmTrust was asked to and did provide a further explanation respecting the reclassification, but there was no request for any restatement and no such thing occurred. It is important to emphasize that the reclassification had no impact on net income and AmTrust's stated financials remain accurate to this day.

Unable to point to a restatement, Plaintiffs contend that "though a restatement is sufficient to plead falsity, it is not necessary." (Pl. Mem. at 12-13.) In support of this notion, Plaintiffs cite *In re Oxford Health Plans, Inc. Sec. Litig.*, but, in that case, the company had taken "over one-half billion dollars in total charges relating to the fraudulent activities alleged in the Complaint" and paid "three million dollars" in fines. 51 F. Supp. 2d 290, 293 (S.D.N.Y. 1999). Those facts are clearly distinguishable from the facts here where no such material financial charge has occurred and no regulatory penalties have been imposed.

Plaintiffs also contend that "a complaint charging accounting fraud pleads that the accounting figures were false if it pleads that that the company misapplied GAAP, which a plaintiff could prove simply by pointing to a restatement, but also by making a showing based on GAAP itself." (Pl. Mem. at 13.) To support that assertion, Plaintiffs cite *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000). In that case, the plaintiffs alleged both a

violation of GAAP and a restatement. *See id.* at 635. In fact, the corporate defendant was forced to restate its earnings over a three-year period, a period in which it had originally recorded an $18.9 million gain but ultimately incurred a net loss of $36 million. *See id.* at 635. The dramatic disparity between *In re MicroStrategy* and this case underscores why dismissal is warranted. There has been no restatement here, and Plaintiffs fail to plead with the requisite specificity that AmTrust violated GAAP. (*See, supra,* at 1 -5.) GAAP violations cannot establish securities fraud unless "no reasonable accountant would have made the same decisions if confronted with the same facts" or the violations constitute "an egregious refusal to see the obvious, or to investigate the doubtful." *See S.E.C. v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y.1992) (internal citations and quotation marks omitted).

In the opposition brief, Plaintiffs assert that a case Defendants cite, *In re JP Morgan Chase Sec. Litig.*, "is inapposite, because there the issue was whether a restatement established scienter, not falsity." (Pl. Mem. at 13) (citing *In re JP Morgan Chase Sec. Litig.*, No. 02 CIV. 1282 SHS, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007)). As an initial matter, this is a distinction without a difference because a plaintiff must plead both elements. Further, in *JP Morgan*, the court held that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Id*. ((quoting *Novak*, 216 F.3d at 309 (internal quotation marks omitted)). Plaintiffs miss the core element of that holding – an allegation that a defendant violated GAAP cannot exist in a vacuum. *See id*. Instead, a plaintiff must plead with particularity the nature of the fraud and cite to the specific provisions of GAAP violated. *See In re Marsh*, 501 F. Supp. 2d at 477. As Defendants' Motion demonstrated, the SAC falls short of that standard and, instead, relies on conclusory allegations. (Def. Mem. at 11-18.)

### C. AmTrust Disclosed the Accounting Treatment for Intercompany Transactions

"Absent identification of some duty to disclose and specific allegations as to how [a corporate defendant's] existing disclosure was rendered false, plaintiffs' fail to state a claim upon which relief may be granted." *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 590 (S.D.N.Y. 2006).

Defendants' Motion established that AmTrust disclosed that it eliminated transactions between subsidiaries when it consolidated the financial results of those subsidiaries. (Def. Mem. at 18.) Plaintiffs have never alleged that AmTrust materially misrepresented the accounting treatment applied to intercompany transactions. Instead, Plaintiffs contend that the accounting treatment would not apply to losses ceded between subsidiaries, but Plaintiffs cite no provision of GAAP for that conclusion. (Pl. Mem. at 10-11.)

According to Plaintiffs, for "AmTrust, recording of elimination entries . . . would have been unnecessary because premium ceded by one AmTrust's subsidiary [sic] to another AmTrust subsidiary are recorded on the same income statement line. The same is true for loss and loss adjustment expense."[6] (Pl. Mem. at 11.) But the portions of the SAC that relate to the proper use of elimination entries do not cite a single accounting authority. (*See* SAC ¶¶ 139-142.) And the portions of the opposition brief that articulate those same "rules" cite only the SAC. (Pl. Mem. at 11.) This circular attempt at pleading securities fraud fails as a matter of law. *See City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Co.*, 655 F. Supp. 2d 262, 270 (S.D.N.Y. 2009) (holding allegations did not "plead with particularity" that defendant violated "accounting standards" because complaint alleged in conclusory fashion "standards that it cite[d]

---

[6] Plaintiffs have an overly simplistic view of the consolidation process and fail to appreciate that some line items get eliminated naturally during consolidation and, as a result, do not require a corresponding elimination entry. Thus, there is no support for an inference of fraud based on the lack of a corresponding entry. In other words, Plaintiffs try to create a dispute where none exists.

as definitive").

# POINT II.

## THE SAC DOES NOT ADEQUATELY PLEAD THE REMAINING ELEMENTS OF A SECTION 10(B) CLAIM

### A. Plaintiffs Have Not Pled Scienter Adequately

The SAC's attempt at pleading scienter is woefully inadequate. Plaintiffs had the audacity to charge the individual defendants with fraud, but failed to allege any personal motive on the part of those individuals, including any stock sales during the class period. Plaintiffs in these cases typically point to stock sales by the individuals, statements of former employees or "confidential witnesses," a restatement, or a corporate meltdown. Such facts are conspicuous by their absence in the SAC.

In this Circuit, conclusory "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak*, 216 F.3d at 309. Instead, "[o]nly where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." *See id.* (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)) (internal citations omitted). Defendants' Motion established that Plaintiffs fail to allege the "corresponding fraudulent intent" required to avoid dismissal. (Def. Mem. at 18-23.)

### 1. The SAC Fails to Allege the Individual Defendants Had Access to Reports that Contradicted Their Public Statements

As noted in Defendants' Motion, Plaintiffs alleged in highly conclusory fashion that the individual defendants had access to raw data in the form of the unconsolidated financials of AmTrust's subsidiaries. Plaintiffs fail to allege in detail that the individual defendants received reports showing that AmTrust, when it consolidated the data in those financials, applied an improper accounting treatment to losses ceded between subsidiaries. (Def. Mem. at 21.)

Because there has been no restatement here, Plaintiffs try to establish scienter by arguing

that "a number of courts in this district and in others have held that a strong inference of scienter exists where the issuer has reported materially better financial results in its SEC filings than it has reported in other regulatory filings." (Pl. Mem. at 19.) In two of the cases cited, however, the courts actually **dismissed** the claims against the individual defendants because the plaintiffs had failed to plead that the officers had access to contradictory information or documents.[7] The last case Plaintiffs cite on this point is inapposite because the court held the plaintiffs had adequately pled scienter based on the egregious nature of the allegations, and the court never addressed the regulatory filings in its scienter analysis. *See In re Advanced Battery Technologies*, 2012 WL 3758085, at *11. In addition, the plaintiffs alleged that the same parent company reported different top-line results in the United States and overseas – a fact not alleged here. *See id*.

Even if Plaintiffs had adequately pled that the individual defendants had access to contrary facts, the fact that no restatement has occurred would undercut any attempt to establish recklessness.[8] *See In re JP Morgan*, 2007 WL 950132, at *139 (lack of restatement suggests "reasonable accountants could differ as to" GAAP applied – "an inference that defeats plaintiffs' claim of recklessness").

### 2. Motives Common to All Companies Cannot Support an Allegation of Scienter

Defendants' Motion established that a "bald allegation that defendants committed fraud

---

[7] *See In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-CV-9456 JSR, 2014 WL 2839440, at *10 (S.D.N.Y. June 23, 2014); *McIntire v. China MediaExpress Holdings, Inc*., 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013).

[8] Plaintiffs egregiously misrepresent the content of the letter from the New York Department of Insurance. Plaintiffs claim that the Department "has required AmTrust to engage a new auditor because it doesn't believe its current auditor (BDO) has the necessary experience to audit AmTrust's international operations." (Pl. Mem. at 13.) Plaintiffs neglect to mention that this instruction appeared in a letter from the Department approving the acquisition of Tower Group International, Inc. by an AmTrust affiliate. *See, e.g.*, AmTrust Financial Services, Inc., Current Report (Form 8-K) (Sept. 12, 2014) (Tully Dec., Ex. C) The Department required AmTrust to hire a new auditor simply to accommodate the growth anticipated to result from the merger. *See id.* Thus, it was unrelated to the issues in this case, and the Department never suggested that BDO lacked the necessary experience.

out of a desire to raise capital for the corporation does not give rise to a strong inference of fraudulent intent." *Russo v. Bruce*, 777 F. Supp. 2d 505, 520 (S.D.N.Y. 2011). In the opposition brief, Plaintiffs assert that "AmTrust had substantial motive to conceal its true losses in order to obtain more than $600 million from a series of debt and equity offerings . . . ." (Pl. Mem. at 22.) **But the courts in the cases Plaintiffs cite held such allegations insufficient to plead motive.[9]**

Plaintiffs also contend that the desire to raise capital can supply corroborating evidence bolstering an otherwise valid allegation of scienter based on motive. (Def. Mem. at 23.) But in the opposition brief, the only arguments with respect to motive are related to raising capital. A desire to raise capital cannot establish a motive to defraud, and Defendants' Motion established that a company's need "to comply with various financial covenants in its loan agreements is similarly deficient as a motive allegation as they are common to most companies." *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 867 (S.D.N.Y. 2011), *aff'd sub nom.*, *Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). Plaintiffs failed to respond to the latter argument in any fashion.

### 3. The "Core Operations" Theory, Without More, Cannot Support an Allegation that Individual Defendants Had the Requisite Scienter

Courts in this Circuit cast doubt on "whether the 'core operations' doctrine has survived the [Reform Act] at all," and those courts that continue to accept it apply the doctrine only to bolster substantial allegations of scienter. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 596 n. 17 (S.D.N.Y. 2011). Defendants' Motion established that Plaintiffs fail to allege any substantial scienter allegations that the core operations theory might bolster. (Def. Mem. at 19-23.)

In the opposition brief, Plaintiffs assert that, "even if the core operations inference is

---

[9] *See In re Twinlab Corp. Sec. Litig.,* 103 F. Supp. 2d 193, 206-07 (E.D.N.Y. 2000); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 445 (S.D.N.Y. 2000).

insufficient for scienter, Ziskind [sic] and Pipoly discussed these three metrics in conference calls reporting on annual and quarterly earnings, at length, over three years . . . . [and] [t]he unlikely possibility that Ziskind [sic] and Pipoly expounded on these key metrics . . . without . . . . . . having knowledge of AmTrust's true L/LAE and loss ratios is not an exculpatory explanation – it is recklessness." (Pl. Mem. at 21.) As the above quotation makes clear, Plaintiffs are simply restating a core operations theory. And courts have held the fact that "an allegedly fraudulent statement concerned 'core operations,' standing alone, is insufficient to support strong circumstantial evidence of scienter." *The9, Ltd.*, 772 F. Supp. 2d at 595.

In other words, at every turn in their scienter discussion, Plaintiffs seek to lean one infirm and invalid allegation on another. Building a straw house by piling on deficient allegations is no substitute for the detailed facts required to build a strong inference of scienter under the Reform Act's heightened standards. *See, .e.g.*, *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 VEC, 2014 WL 6466994, at *6 (S.D.N.Y. Nov. 18, 2014) (Caproni, J.).

**B.      The Amended Complaint Does Not Allege Loss Causation Adequately**

As Defendants' Motion pointed out, "[a] negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).[10] In the opposition brief, Plaintiffs claim that the "critical pieces of information necessary to complete the short report's analyses were not publicly available" and "to complete their analysis and discover AmTrust's fraud, investors would have had to search out and obtain statutory financial statements . . . ." (Pl. Mem. at 16, 24.) Plaintiffs rely, however, on statements

---

[10] As noted at the outset, it is particularly ironic that Plaintiffs seek to term the GeoInvesting Report a "corrective disclosure" when the market price of the Company's stock has rebounded fully, notwithstanding the market's longstanding knowledge of GeoInvesting caustic and negative attack.

publically available in the United States, including AmTrust's 10-K. According to Plaintiffs, the fact that "AmTrust violated GAAP by failing to include and report in its consolidated financial statements all of its L/LAE is evidenced by the chart in ¶116 [of the SAC] . . . ." (Pl. Mem. at 12.) That chart pulls data from three public and domestic sources: (i) AmTrust's 10-K; (ii) a "Schedule Y," which AmTrust's subsidiary files in the United States with an insurance body; and (iii) A.M. Best Reports. (SAC ¶116.) In contrast, in the case Plaintiffs cite, the reports at issue had been published outside the United States, by various, foreign patent authorities. *Alpha Capital*, 2014 WL 6466994, at *2.

In the SAC, Plaintiffs misrepresent the source of the data in the chart, claiming that the chart includes data from the Bermuda entity's audited financial statements. (SAC ¶114.) The chart, however, cites its source material, which does not include the Bermuda entity's audited statements. (SAC ¶116.) Plaintiffs took this chart from the GeoInvesting Report, which expressly states that the chart's source material did not include the Bermuda entity's audited financials. (SAC ¶ 92, Ex. J. at 2.); *see also Stein v. Tangoe, Inc., et al.*, Index No. 13-CV-00286, 2014 U.S. Dist. LEXIS 137966 (D. Conn. Sept. 30, 2014) (citing *Omnicom* and holding that short seller reports merely digesting publically available information were not the types of reports found by several Circuits to be sufficient to sustain a motion to dismiss).

Respectfully submitted, this 14th day of January, 2015.

/s/ Todd R. David
Todd R. David
Jessica P. Corley (*Admitted Pro Hac Vice*)
Joseph G. Tully
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*Counsel for Defendants*
